# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-816


JAIME RIGMAIDEN

VERSUS

SLOANE DELLAFOSSE


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2020-3505
HONORABLE CYNTHIA CLAY GUILLORY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## WILBUR L. STILES
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles, Judges.


**AFFIRMED IN PART;**
**REVERSED IN PART AND RENDERED.  REMANDED.**

**James Darren Stewart**
**Southwest Louisiana Law Center**
**1011 Lakeshore Dr., Suite 402**
**Lake Charles, LA 70601**
**(337) 436-3308**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Jaime Rigmaiden**

**Sloane Dellafosse**
**In Proper Person**
**1103 S. Division Street**
**Lake Charles, LA 70601**
**(281) 258-9564**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Sloane Dellafosse**

**STILES, Judge.**

Plaintiff Jaime Rigmaiden appeals the trial court's denial of his petition for ex parte order for sole custody of his minor daughter and its award of joint custody to Defendant Sloane Dellafosse. He alternatively questions the trial court's order that the parents alternate physical custody of the minor child in two week intervals. For the following reasons, we affirm in part, reverse in part and render. We further remand to the trial court for entry of a specific implementation plan.

## FACTS AND PROCEDURAL HISTORY

Mr. Rigmaiden and Ms. Dellafosse are the parents of their minor daughter Z.R.,[1] born in April 2012. By a May 29, 2014 consent judgment entered in the Family Court of East Baton Rouge Parish, the parties agreed that Z.R. would "live primarily with her mother, Sloane Dellafosse," and that Mr. Rigmaiden would enjoy physical custody of the child on alternate weeks from Sunday at 5:00 p.m. until Tuesday at 5:00 p.m.[2] The parties also agreed that Mr. Rigmaiden would have physical custody at any other time as agreed to by the parties. Mr. Rigmaiden was responsible for transporting the child to and from Ms. Dellafosse's residence.

Although the parties lived in Baton Rouge during Z.R.'s early years, Mr. Rigmaiden moved to Lake Charles when the child was five years old whereas Ms.

---

[1] We use the minor child's initials for confidentiality purposes. *See* Uniform Rules—Courts of Appeal, Rule 2-2.

[2] The judgment addressed only periods of the parties' physical custody without reference to legal custody. Louisiana Civil Code Article 132 provides:

> If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the provisions of R.S. 9:364 apply or the best interest of the child requires a different award. Subject to the provisions of R.S. 9:364, in the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.

Dellafosse and Z.R. relocated to Alaska. Z.R. visited Mr. Rigmaiden in Louisiana during the summer.

While living in Alaska, Ms. Dellafosse experienced periods of homelessness and instability. Given those circumstances, Z.R. lived with Ms. Dellafosse's aunt, Samantha, for a year. Mr. Rigmaiden explained that he lacked financial resources to pursue a change in custody at that point and that he instead felt that Z.R. was "safe" in Samantha's care. He explained that, at other times when he learned that Ms. Dellafosse "was not in a stable situation," he would ask to care for Z.R. but that Ms. Dellafosse refused.

In June 2020, however, Mr. Rigmaiden traveled to Alaska to pick up Z.R. after Alaska child services informed him that Ms. Dellafosse had been arrested for driving under the influence. Z.R. has been in Mr. Rigmaiden's care since that time.

In October 2020, Mr. Rigmaiden filed a Petition for Ex Parte Order for Sole Custody and Incidental Matters. He explained that he feared for Z.R.'s safety after learning that Ms. Dellafosse suggested to Z.R. that she would "come and pick up the child and return with her to Alaska." The circumstance, Mr. Rigmaiden alleged, gave rise to a substantial risk of irreparable harm or injury to the child due to Ms. Dellafosse's June arrest and her inability to offer a stable environment for the child.[3] Mr. Rigmaiden pointed out that, in contrast, he is "married, employed full time, and is able to provide a stable home for the child." He therefore prayed for the immediate issuance of an order of provisional sole custody with Defendant restricted to weekly, supervised visitation within the boundaries of Calcasieu Parish.

---

[3] Louisiana Code of Civil Procedure Article 3945(B)(1) requires that a party seeking an ex parte order of temporary custody must demonstrate "from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition."

The trial court immediately issued an initial ex parte sole custody order, granting Mr. Rigmaiden provisional sole custody of the child and, thereafter, rendered judgment maintaining the order of sole custody pending trial on the merits.

Trial was initially scheduled for a June 14, 2021 hearing, but the parties entered into a consent judgment maintaining Mr. Rigmaiden's sole custody of Z.R. and permitting Ms. Dellafosse some daytime weekend visitation before overnight visitation was permitted.

When the parties returned for a scheduled status conference in August, they again entered into a consent judgment. The trial court's resulting September 15, 2021 judgment maintained Mr. Rigmaiden's sole custody of the child and ordered that Ms. Dellafosse would have visitation every other weekend from after school on Friday until Monday morning when school resumed. The judgment indicated that, when school was not in session, visitation would be from 2:30 p.m. on Friday until 5 p.m. on Sunday.

The September 15, 2021 consent judgment further set the matter for trial. Before the matter was tried, however, Mr. Rigmaiden filed a Rule for Contempt of Court, Attorney Fees, and Cost of Court. He alleged, in part, that Ms. Dellafosse refused to cooperate in his effort to pick up Z.R. after the close of her scheduled weekend visitation and, therefore, failed to comply with the order of the court. Law enforcement was called to the scene, and Ms. Dellafosse was arrested. Mr. Rigmaiden sought a finding of contempt and punishment by jail time and the payment of costs and attorney fees.

The trial court ultimately heard the merits of Mr. Rigmaiden's petition in May 2022. Both parties testified, with Mr. Rigmaiden explaining the course of the parties' relationship, Z.R.'s move to Alaska with her mother, and the circumstances under

3

which Z.R. came into his care following Ms. Dellafosse's arrest. Mr. Rigmaiden testified that, in addition to his request for permanent sole custody, he sought supervised visitation after having learned of the extent of Ms. Dellafosse's arrest history, as revealed in the course of litigation. Ms. Dellafosse represented herself during the proceedings and also testified on her own behalf. While not addressing her criminal history at length, she explained to the court that she has experienced mental health difficulties due to diagnoses of "Bipolar II and borderline personality disorder as well as PTSD and severe depression." She stated that she had been "off-and-on homeless for a very long time" given a lack of family support. Ms. Dellafosse acknowledged inconsistent employment as well but represented to the court that both her employment and housing situation in the time period before trial had been more stable.

The trial court rendered oral reasons at the close of proceedings, first denying Mr. Rigmaiden's request for an ex parte order of sole custody upon a finding that he failed to demonstrate irreparable harm of such a nature that "[t]he child is placed in such danger that it would be considered irreparable harm because the child is very likely to be harmed either intentionally or unintentionally while in the care of an impaired parent." The trial court noted that at the time Mr. Rigmaiden filed the petition two years earlier, the specter of harm differed as Ms. Dellafosse had suggested that she would travel to Louisiana and return with Z.R. to Alaska. Two years had passed by the time of the May 2022 trial, however, and Z.R. had been in Mr. Rigmaiden's sole custody since that time.

The trial court instead concluded that the matter was better addressed as an evaluation of the award to Mr. Rigmaiden of "temporary sole custody until such time as [the matter] could be heard." The trial court noted that, at the time of trial, Ms.

4

Dellafosse was essentially exercising "every other weekend visitation." Given the circumstances existing at that time, the trial court concluded that, although Mr. Rigmaiden had "done a good job" under the period of sole custody, an amendment of the consent custodial arrangement to reflect joint custody was more appropriate. The trial court fashioned a resulting July 18, 2022 judgment, alternating physical custody of the child in two week intervals. The trial court failed to designate a domiciliary parent.

The judgment further included the trial court's ruling on Mr. Rigmaiden's rule for contempt, finding Ms. Dellafosse in contempt "for not returning the minor child, [*Z.R.*]*, born 4/13/12* in accordance with the court order[.]" The trial court ordered Ms. Dellafosse to pay $750 in attorney fees.

Mr. Rigmaiden thereafter filed a Motion and Order for Appeal/Writ of the trial court's "Interim Judgment regarding the issues of 'Custody' and 'Contempt of Court[.]'" The trial court signed a resulting order for appeal or, "in the alternative, writ[.]"[4]

By his appellant's brief, Mr. Rigmaiden assigns error in the trial court's 1) granting the parties joint custody of Z.R., with the parents alternating physical custody in two week intervals; 2) making Mr. Rigmaiden responsible for providing

---

[4] Both Mr. Rigmaiden and the trial court were equivocal in their respective motion and order as to whether the judgment under review is appropriately considered as an appeal or as an application for supervisory writ. Notably, the trial court entered an award of interim custody as the parties were ordered to "return for a review on December 8, 2022[.]" A final judgment, however, must be precise, definite, and certain. *See Adams v. Adams*, 18-1153 (La.App. 1 Cir. 2/22/19), 272 So.3d 577. We point out that this court retains discretion to consider non-appealable matters under its supervisory jurisdiction. *See Stelluto v. Stelluto*, 05-0074, p. 7 (La. 6/29/05), 914 So.2d 34, 39 ("The Louisiana Constitution confers appellate jurisdiction upon the courts of appeal over 'all civil matter' and 'all matters appealed from family and juvenile courts' and supervisory jurisdiction over 'cases which arise within its circuit.' La.Const. art. V, § 10(A)."). To the extent the judgment under review, in part, lacks definitiveness given its interim status, we consider this matter under our supervisory jurisdiction. *See, e.g., Hoffpauir v. Hoffpauir*, 21-473 (La.App. 3 Cir. 2/9/22), 333 So.3d 1262.

5

transportation to and from school during the periods of Ms. Dellafosse's physical custody; and in 3) failing to designate a domiciliary parent.

**DISCUSSION**

*Legal and Physical Custody*

Mr. Rigmaiden does not question the trial court's denial of his initial request for an award of ex parte sole custody. He instead questions the trial court's award of joint custody, arguing that sole custody would have been more appropriate upon balancing of the factors of La.Civ.Code art. 134. He alternatively suggests that this court maintain the award of joint custody but that the schedule of physical custody be amended to award Ms. Dellafosse physical custody every other weekend. We find merit in this latter position and, accordingly, amend the judgment below.

On review, we are mindful that a trial court's factual findings as to custody of a child will not be disturbed absent manifest error. *Joubert v. Joubert*, 19-349 (La.App. 3 Cir. 11/13/19), 285 So.3d 7. As the trial court is in a superior position to assess the credibility of witnesses and the best interests of the child upon consideration of the testimony and evidence, an appellate court will not disturb a custody award unless an abuse of discretion is clearly shown. *Id.*

When, as here, the underlying custody decree is a consent judgment, rather than a considered decree, the party seeking modification of the decree must prove that 1) there has been a material change of circumstances since the custody decree was entered, and 2) the proposed modification is in the best interest of the child. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731; *Joubert*, 285 So.3d 7.

The first element of the burden of proof is clear. Circumstances have materially changed since the parties entered into the initial consent judgment. Mr. Rigmaiden was granted interim sole custody of Z.R. in the face of exigent

circumstances requiring her relocation to Louisiana. At the time of trial, Z.R. had been in his sole care with Ms. Dellafosse granted increasing responsibility and visitation as seen in the schedules set forth in the consent judgments of June 30, 2021 and September 18, 2021. Testimony indicated that Z.R. had done well while in Mr. Rigmaiden's care.

Mr. Rigmaiden, however, was further required to prove that his request for permanent sole custody was in the child's best interest upon consideration of the factors of La.Civ.Code art. 134. Following review, we find no abuse in discretion in the trial court's determination that a return to joint custody is warranted. However, as seen below in consideration of the factors, we find that the trial court abused its discretion in the manner in which it fashioned the physical custody schedule.

Louisiana Civil Code Article 134(A) provides a nonexclusive list of pertinent best interest factors as follows:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
>
> (2) The love, affection, and other emotional ties between each party and the child.
>
> (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (6) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (7) The moral fitness of each party, insofar as it affects the welfare of the child.

7

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

We consider each of these in turn in reference to the trial court's finding and in light of the evidence presented at trial.

Potential for Abuse

As remarked upon by the trial court, "there's never been an allegation of abuse by either party[.]" Mr. Rigmaiden concedes as much in his brief to this court, stating that this first factor is inapplicable to either party.

Love, Affection, and Other Emotional Ties Between Each Party and the Child

Next, the trial court assessed each party equally in this regard and the record does not demonstrate otherwise.

Capacity and Disposition to Give the Child Love, Affection, and Spiritual Guidance and to Continue the Education and Rearing of the Child

The trial court again found the parties to be "equal" as to this factor, and the record does not dictate a contrary finding. The record is, however, largely silent on

8

this factor as Z.R. did not testify, and the parties were otherwise focused on the issues of stability and safety. Both parties generally expressed their desire to provide Z.R. with a secure environment and to facilitate her education.

We note that, in his brief, Mr. Rigmaiden suggests that the parties were "equal" on this factor "until Jamie Rigmaiden was compelled to file the 'Motion to Maintain Education at Moss Bluff Education' on September 2, 2022 after Sloane Dellafosse removed the child from Moss Bluff Elementary and placed her into home schooling." While Mr. Rigmaiden may have a valid concern, the referenced pleading was filed, and its underlying facts occurred, *after* the judgment was rendered in this case and are outside of the appellate record. Accordingly, we do not consider that occurrence as an appellate court has jurisdiction to "render any judgment which is just, legal, and proper *upon the record on appeal*." La.Code Civ.P. art. 2164 (emphasis added). An appellate court has no authority to consider facts or evidence referred to in briefs that are outside of the record. *Kott v. Kott*, 20-0873 (La.App. 1 Cir. 4/16/21), 324 So.3d 165; *Dixon v. City of Alexandria*, 16-880 (La.App. 3 Cir. 5/31/17), 222 So.3d 739. For this reason, we do not disturb the trial court's assessment of the parties' relatively equal position with regard to this factor.

Capacity and Disposition of Each Party to Provide the Child with Food, Clothing, Medical Care, and Other Material Needs

As for the parties' respective ability to provide material needs, the trial court observed that Ms. Dellafosse "has gone up and down[,]" whereas Mr. Rigmaiden has remained steady." The trial court continued, however, suggesting that Ms. Dellafosse "has gotten herself together … at this point[.]" Our review indicates that the trial court correctly recognized Ms. Dellafosse's improvement in her financial circumstances but failed to appreciate and otherwise evaluate the tenuousness of her

9

situation. An appropriate recognition of her late developing financial position patently favors Mr. Rigmaiden on this point.

Namely, Ms. Dellafosse explained that she had held a position as a server at a restaurant for a month prior to trial. While Ms. Dellafosse explained to the trial court that she liked the position and that it offered her a degree of flexibility, she further admitted that she "had at least five or six jobs since October of 2021[.]"

Moreover, by a child support order of August 26, 2021, Ms. Dellafosse was ordered to pay $187 in monthly child support. Yet, at the time of the May 2022 trial, she had only attempted to make one monthly payment in the amount of $150, doing so only on the month of trial and only through a State "portal." She explained that she attempted to make the payment in that fashion as she thought it "was the procedure." When asked why she had waited to make the payment, she explained that: "[I]t's not until this month that I've become stable enough or had enough stream of income to be able to start paying any child support. But as soon as I did, I made some kind of payment."

Mr. Rigmaiden, in contrast, testified regarding his steady employment as a restaurant manager at a casino. He confirmed that he had not received any child support from Ms. Dellafosse and that she had not assisted with Z.R.'s medical expenses.

Plainly, although the trial court correctly observed that Ms. Dellafosse has improved her financial position, she has failed to demonstrate any pattern suggesting an ability, other than an aspirational one, to provide Z.R. with material needs. Simply, the one month of greater financial stability does not equate to Mr. Rigmaiden's past two years of providing for the totality of Z.R.'s care. This factor clearly favors Mr. Rigmaiden.

<u>Length of Time the Child has lived in a Stable, Adequate Environment and the Desirability of Maintaining Continuity of that Environment</u>

The trial court explained that this factor "tilted" in Mr. Rigmaiden's favor, noting that the child had been with Mr. Rigmaiden "for the last two years." The trial court suggested that the period of stability was "all [she had] to go on" and otherwise reasoned that, before the two-year period, "when she was with mom and mom was doing well, she was - - you never worried about her was basically the testimony that was given here." The trial court's assessment of the evidence only "tilting" in favor of Mr. Rigmaiden is at odds with the evidence.

First, the trial court noted that, while Z.R. was with mom "*and mom was doing well*," Mr. Rigmaiden had no concerns about Z.R. (Emphasis added.) The trial court failed to account for the fact that when Ms. Dellafosse was not "doing well," the mother and child experienced homelessness and, when Ms. Dellafosse was placed into a mental health facility, Z.R. was placed in the care of relatives. For a year, Z.R. lived with Ms. Dellafosse's aunt. It was during that period—when Z.R. was in Aunt Samantha's care—and when Ms. Dellafosse was doing well that he felt that Z.R. was safe.[5] Mr. Rigmaiden explained that each time he learned that Ms. Dellafosse and Z.R. were not in a stable position, he would ask for Z.R. but Ms. Dellafosse would not consent for Z.R. to live with him. He pointed out that Ms. Dellafosse was the domiciliary parent at that time. And it is important to recall that Z.R. finally came into Mr. Rigmaiden's sole care when Ms. Dellafosse was arrested.[6] Z.R. was

---

[5] Ms. Dellafosse represented herself at trial and cross-examined Mr. Rigmaiden. She questioned him on his concern for Z.R.'s safety, and he explained: "She was safe with Sam, and there were periods of time when she was safe with you, but it was just so unpredictable, you know."

[6] The parties seemingly disagree about the circumstances under which Z.R. came into the care of child services in Alaska. Mr. Rigmaiden explains that he was informed that Ms. Dellafosse was arrested for DUI, whereas Ms. Dellafosse suggested in her cross-examination of Mr.

briefly taken into the care of Alaska child services before Mr. Rigmaiden could travel to Alaska to pick her up.

While Ms. Dellafosse testified that she now has a two bedroom home for Z.R., she acknowledged that she had been in the residence for slightly less than two months. She admitted that, before her present living situation, she had six or seven residences since returning to Louisiana in 2020 as it had been "very difficult to find housing and no homeless outreach services." She thus explained that she had found it "very difficult to maintain housing while trying to establish new employment and establish new residency, and since I have little to no family support here, it was a bit difficult to find stability, but I have that now." Again, however, that stability is newfound as evidenced by Mr. Rigmaiden's testimony that Z.R. informed him in March 2022, only two months before trial, that she had been with her mother at a shelter for the homeless.

In contrast to the trial court's suggestion that this factor "tilts" in favor of Mr. Rigmaiden, the record indicates that this factor is clearly and obviously in his favor. He has been steadily employed, owns a home, has a wife who cares for Z.R. when he is at work, and has a family network in the area for assistance when needed. Mr. Rigmaiden has a vehicle, whereas Ms. Dellafosse has no transportation and relies, at times, on ride sharing services. Z.R. has been in Mr. Rigmaiden's care for two

---

Rigmaiden that she suffered a "psychotic break" and was hospitalized. Ms. Dellafosse's criminal record, however, includes a DUI arrest and conviction, as discussed below.

Mr. Rigmaiden, however, introduced into evidence a criminal event listing for Ms. Dellafosse. A "6/27/2020" entry lists an "offense" for "DUI – BAC .08+ Percent (Class A Misdemeanor)" and a corresponding July 20, 2021 disposition to the charge as "Guilty Conviction after Guilty Plea." The record also lists a "6/27/2020" charge for the offense of "Violate Conditions of Release for Mid (Class B Misdemeanor)" which was also disposed of by "Guilty Conviction after Guilty Plea." Finally, the prosecution dismissed a "6/27/2020" charge of "Drive w/Lick Can/Rev/Sus for Crim Offense (Class A Misdemeanor)."

years with Ms. Dellafosse exercising only limited periods of visitation. Plainly, continuity of the stable environment offered by Mr. Rigmaiden is desirable, a point underlying our discussion below about the amendment to the physical custody schedule detailed below.

Permanence, as a Family Unit, of the Existing and Proposed Custodial Home or Homes

The trial court again suggested that the parties were similarly situated under this factor, stating that "you all are separated, so you each have your family unit in your own right." Ms. Dellafosse has moved from place to place, only establishing what she represents is more stable housing in the two-month period before trial. Two months of stable housing does not translate into stability when taken in the context of Ms. Dellafosse's history of residency. The fact that she also has an outstanding warrant in another state should have been considered in the trial court's evaluation of this factor. On the other hand, Mr. Rigmaiden owns his home, which he shares with his wife, his other child, and Z.R. He also has the support of an extended family in the area. In contrast to the trial court's finding, the record dictates a finding that this factor favors Mr. Rigmaiden.

Moral Fitness of Each Party, Insofar as it Affects the Welfare of the Child

On this point, the trial court stated only that, "never a doubt, as I've said previously, morality was never an issue." Mr. Rigmaiden's counsel concedes this point, writing in the appellant's brief that "there was a tie between the parties."

History of Substance Abuse, Violence, or Criminal Activity of Any Party

Mr. Rigmaiden introduced a record of Ms. Dellafosse's "criminal history" in Alaska, including charges and a conviction by guilty plea related to the June 2020 DUI arrest leading to Mr. Rigmaiden's sole custody of Z.R. The criminal history

documents a number of charges, including a prior, August 10, 2019 offense of "Operating Under the Influence (Misdemeanor – Not Classified)" which was disposed of by a "Guilty Conviction After No Contest Plea." On that same date, a charge of "Violate Conditions of Release" was also disposed of by "Guilty Conviction After No Contest Plea[.]" The prosecution dismissed a corresponding charge of refusal to submit to a chemical test. The criminal history further lists a remaining charge of a "probation/parole violation" and includes no disposition. With regard to pending charges, Ms. Dellafosse spoke at trial about an outstanding warrant that she is attempting to have resolved.

Mr. Rigmaiden also submitted documentation from a news site listing April 2021 arrests in California which indicated that "30-year old Sloane Dellafosse was arrested in Los Angeles County (Los Angeles Police) on April 9th on Suspicion of Unlicensed Sale/Loan Trade of Firearm."

While the trial court acknowledged the Alaska criminal history, the trial court explained that "Everything that I read with regard to [the] Alaska issue and – even the last page discusses that there was a plea of guilty." The Alaska "issue" however related to multiple charges as well as multiple convictions and must be accounted for in the factor addressing the parties' criminal activity. The trial court also seemingly discounted the outstanding warrant, remarking that it "appears that that issue either has been resolved or will be resolved shortly." It was nonetheless pending at the time of the trial with no certain resolution provided other than Ms. Dellafosse's suggestion that a new public defender was working on the situation.

Given the presence of this activity, and the lack of evidence regarding any criminal history on the part of Mr. Rigmaiden, it is clear that the trial court failed to properly assess this factor, one that overwhelmingly weighs in favor of Mr.

Rigmaiden. Although the parties did not testify regarding Ms. Dellafosse's substance abuse, it merits consideration that Ms. Dellafosse's criminal history reflects that she was twice convicted of DUI, one of which involved the dismissal of a separate charge of "Assault-Recklessly Cause Injury." Again, Mr. Rigmaiden briefly remarked on his further discovery that Ms. Dellafosse was arrested in California for a firearm-related offense.

In light of that history, it is apparent that this factor favors Mr. Rigmaiden.

Mental and Physical Health of Each Party

The trial court did not separately discuss this factor in ruling. It is clear, however, that Ms. Dellafosse's mental health is central to this case and central to the unstable circumstances by which Z.R. came into Mr. Rigmaiden's sole custody.

Ms. Dellafosse acknowledged her mental health difficulties and her diagnoses of Bipolar II, PTSD, borderline personality disorder, and severe depression. At one point, she entered into inpatient treatment after experiencing suicidal ideation. Ms. Dellafosse explained that this history, along with the perception of lack of family support, lead to periods of homelessness and the necessity for Z.R. to live with others at times. Ms. Dellafosse testified that she continues to pursue therapy and explained that she will again pursue medication after she starts receiving Medicaid. It is crystal clear, considering the medical and criminal record of Ms. Dellafosse, that at the time of the trial she had not demonstrated a history of mental or emotional stability. It is in the best interest of a child to be parented by a mentally stable adult. While Ms. Dellafosse may be on her way, and we hope that she gets there, at the time of this trial the record does not support such a finding. Therefore, this factor weighs heavily in favor of Mr. Rigmaiden.

Home, School, and Community History of the Child

In assessing this factor, the trial court merely chronicled the child's history of having lived in Baton Rouge before moving to Alaska, and then a return to Louisiana for the "last two years[.]" The trial court did not comment upon the fact that the period in Alaska was tumultuous with Ms. Dellafosse and Z.R., by extension, having an itinerate, unstable lifestyle. Since coming into Mr. Rigmaiden's sole care in Louisiana, Z.R. lives in the home owned by her father and stepmother and is on the honor roll at school. Ms. Dellafosse, in contrast, has aspirational goals for Z.R.'s schooling and extracurricular activities, but again, had only been in her current home for a few weeks at the time of trial. In short, the record reflects that the past two years have offered the only period of stability in Z.R.'s life. This factor obviously favors Mr. Rigmaiden.

Reasonable Preference of the Child

As noted by the trial court, Z.R. did not testify and neither party introduced evidence in this regard.

Willingness and Ability of Each Party to Facilitate and Encourage a Close and Continuing Relationship Between the Child and the Other Party, Except When Substantial Evidence of Specific Abusive, Reckless, or Illegal Conduct

The trial court remarked that this factor presents "a problem" as Mr. Rigmaiden "hasn't testified that he was concerned about [Z.R.] being safe when in Sloane's care, other than the time that they were in Alaska." The trial court did not address the foundational inquiry of the factor, i.e., whether the parties encourage the child's relationship with the other party.

In this regard, the record is replete with Mr. Rigmaiden's facilitation of Ms. Dellafosse's ongoing relationship with Z.R. despite Ms. Dellafosse's challenging circumstances. Although he had sole custody of Z.R., Mr. Rigmaiden consented to

Ms. Dellafosse's increased periods of responsibility and visitation. Ms. Dellafosse was initially granted daytime visitation, but Mr. Rigmaiden later joined in a consent judgment granting overnight, weekend visitation. Mr. Rigmaiden allowed Ms. Dellafosse to maintain that schedule, despite her reluctance to provide her address and despite Z.R. telling him that at times she and her mother stayed at a hotel or a homeless shelter. The latter such instance purportedly occurred in March 2022, only two months before trial. Mr. Rigmaiden further allowed Ms. Dellafosse's family to see Z.R. when they visited from Alaska and has asked Z.R.'s school to provide Ms. Dellafosse with access to Z.R.'s school records.

Contrary to the trial court's suggestion that Mr. Rigmaiden failed to express concerns for Z.R.'s safety, Mr. Rigmaiden explained that he filed the petition for sole custody upon hearing that Ms. Dellafosse informed Z.R. that she would travel to Louisiana and return to Alaska with the child. Mr. Rigmaiden explained that he could not let that happen because Z.R. was not safe in that situation. While Mr. Rigmaiden acquiesced in Ms. Dellafosse's visitation with Z.R., he explained that it was only upon learning the extent of Ms. Dellafosse's criminal history that he began to feel that Ms. Dellafosse's visitation with Z.R. should be supervised.

Given Mr. Rigmaiden's documented efforts, we find that the trial court manifestly erred in failing to recognize that Mr. Rigmaiden has accommodated Z.R.'s continuing relationship with her mother as anticipated by this factor.

Distance Between the Respective Residences of the Parties

As noted by the trial court, this factor is "not an issue[,] as both parties live in Lake Charles.

17

<u>Responsibility for the Care and Rearing of the Child Previously Exercised by Each Party</u>

The trial court again explained that this factor is "tilted" in Mr. Rigmaiden's favor. The record supports that determination but again merits discussion of Mr. Rigmaiden's exponentially superior position in this regard. Ms. Dellafosse's history with Z.R. has been interrupted by periods of instability and, at times, has required assistance from her family for Z.R.'s care. Additionally, the social services of Alaska had to get involved in the care of the child due to the mental fitness of Ms. Dellafosse, and/or her criminal history. During her period of custody, Ms. Dellafosse failed to demonstrate that she could care for Z.R. responsibly. In contrast, Mr. Rigmaiden cared for Z.R. each summer while the child was living in Alaska and has been her sole custodian for the two years prior to the trial, doing so without financial assistance from Ms. Dellafosse.

On review of each of these factors, it is clear that the majority of these factors favor Mr. Rigmaiden, particularly given the steady and consistent environment he has offered.

Notwithstanding our recognition that each of the above factors either weigh heavily in favor of Mr. Rigmaiden or are evenly balanced between the parties, we find no abuse of discretion in the trial court's determination that joint custody is appropriate in this case. Although newfound, Ms. Dellafosse has made strides in improving the stability she is able to offer Z.R. Mr. Rigmaiden acknowledged as much in the increased visitation offered by the consent judgment of September 15, 2021 which, despite Mr. Rigmaiden's sole custody of the child, allowed Ms. Dellafosse to exercise visitation every other weekend from after Z.R.'s school on

18

Friday until Monday morning when school resumed. We accordingly maintain the trial court's award of joint custody to the parties.

Given the newness of Ms. Dellafosse's housing and employment stability, we find that the trial court abused its discretion in its order that the parties "alternate physical custody of the minor child in two (2) week intervals[.]" Such constant upheaval undermines the benefits associated with the two years of stability Mr. Rigmaiden has offered Z.R. while she has been in his care. Furthermore, until Ms. Dellafosse demonstrates the appropriate treatment of her mental conditions, this type of arrangement is not in the best interest of Z.R. Rather, the balance of the best interest factors of La.Civ.Code art. 134 in Mr. Rigmaiden's favor indicates that he be assigned the larger share of the physical custody schedule.

Moreover, given Ms. Dellafosse's acknowledgement that her mental health and living situation have been fluid up until the short period immediately before trial, we find that the best interest of the child further requires that Ms. Dellafosse's physical custody must be supervised, at least until Ms. Dellafosse's has experienced a longer period of stability.[7]

Accordingly, we amend the physical custody schedule and order that Ms. Dellafosse shall enjoy supervised physical custody of Z.R. on alternating weekends, beginning on Friday after school until Monday when school resumes. In the event school is not in session, Ms. Dellafosse shall enjoy supervised physical custody beginning on Friday at 2:30 p.m. and ending on Sunday at 5 p.m. This arrangement largely tracks the physical custody schedule the parties agreed to in the consent

---

[7] We leave the specifics of the supervision for the trial court's determination on remand. The appellate record is silent as to the parties' potential resources for supervision other than the June 30, 2021 consent judgment requiring that Ms. Dellafosse's visitation "shall be at the residence of Brenda Dellafosse …, Lake Charles, LA."

judgment signed September 15, 2021. Except for the single incidence of Ms. Dellafosse's failure to return the child in accordance with the schedule which resulted in a finding of contempt of court, the parties appear to have cooperatively exercised physical custody of the child in accordance with the above schedule. We therefore amend the judgment in this regard and, below, remand the matter to the trial court for the recasting of judgment and imposition of a specific implementation order in keeping with La.R.S. 9:335, as discussed below, and in keeping with the ruling here. The trial court's judgment is to reflect the alternating weekend schedule for the exercise of Ms. Dellafosse's physical custody and to include the physical custody schedule for holidays and the summer months upon consideration of the parties' needs.

*Domiciliary Parent*

Moreover, as noted by Mr. Rigmaiden, the trial court failed to designate a domiciliary parent in the judgment of July 18, 2022. Reference to the record further reflects a general absence of designation of legal authority and responsibility.

Louisiana Revised Statutes 9:335 provides however, that:

> A. (1) In a proceeding in which joint custody is decreed, *the court shall render a joint custody implementation order except for good cause shown.*
>
> (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
>
> (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
>
> (c) The implementation order shall include a provision that when either party is required to evacuate this state with a minor child because of an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority and it becomes impossible for the parties to exercise custody as provided in the

20

judgment, the parties shall engage in continuous communication regarding the safe evacuation of the child, the location of the child during and after the emergency or disaster, and an interim custody plan for the child until the custody provisions of the judgment can be resumed.

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) *In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.*

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.

(Emphasis added.) Construing La.R.S. 9:335, the supreme court has explained that the provision "manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. The text is clear. Although each parent can share physical custody, the court can designate only a single domiciliary parent." *Hodges v. Hodges*, 15-0585, p. 9 (La. 11/23/15), 181 So.3d 700, 706 (citations omitted).

Given the judgment's silence as to designation of a domiciliary parent, it is difficult to discern whether the trial court sought to place the parents in a position of equal responsibility or whether this was an error by omission. In any event, however,

21

the record establishes that the designation of a domiciliary parent and issuance of an implementation order are critical in order to eliminate discord and uncertainty in Z.R.'s rearing.[8]  As seen above, the best interest of the child analysis firmly dictates that Mr. Rigmaiden be designated the domiciliary parent given his demonstrated stability and consistency of environment.  Ms. Dellafosse has not yet offered a similar environment as suggested by our order that the exercise of her physical custody be supervised.  We, therefore, below designate Mr. Rigmaiden as domiciliary parent and order that the trial court's judgment on remand include that designation.

We remand this matter and direct the trial court to enter an implementation order reflective of Mr. Rigmaiden's status as the domiciliary parent as well as the schedule of shared physical custody discussed above, the parties' emergency evacuation contingency plan, and the allocation of the parties' legal authority and responsibilities.  *See* La.R.S. 9:335(A)(2) and (3).

## DECREE

The trial court's judgment of July 18, 2022 is affirmed to the extent it grants the parties, Jaime Rigmaiden and Sloane Dellafosse, joint custody of their minor child, Z.R., born April 23, 2012.  The judgment is amended to include designation of Jaime Rigmaiden as the domiciliary parent of Z.R.

The judgment of July 18, 2022 is reversed with regard to the physical custody schedule.  The judgment is amended to reflect that Sloane Dellafosse is to enjoy

---

[8] In his brief to this court, Mr. Rigmaiden suggests that the failure to include a domiciliary parent has proven unworkable in the time period since the rendition of the judgment under review. Namely, he contends that the parties have encountered problems in decision making regarding Z.R.'s schooling and in transportation between alternating physical custody. These occurrences, however, are not reflected in the appellate record under review and are therefore not properly considered here. *See Dixon*, 222 So.3d 739.

22

supervised physical custody of Z.R. every other weekend beginning Friday after school until Monday when school resumes. In the event school is not in session, Ms. Dellafosse shall enjoy supervised physical custody beginning on Friday at 2:30 p.m. and ending on Sunday at 5 p.m. This matter is remanded for further designation of the terms of the supervision required for Ms. Dellafosse's exercise of her physical custody, further delineation of the physical custody schedule with regard to holidays, and for a specific implementation order in keeping with La.R.S. 9:335. The implementation order shall include the parties' emergency evacuation contingency plan, and the allocation of the parties' legal authority and responsibilities. *See* La.R.S. 9:335(A)(2) and (3).

Costs of this proceeding are assessed to Appellee Sloane Dellafosse.

**AFFIRMED IN PART;**
**REVERSED IN PART AND RENDERED. REMANDED.**